THE STATE OF OHIO *v.* PERSON.

[Cite as State v. Person (1973), 34 Ohio Misc. 97.]

(No. 781681—Decided April 9, 1973.)

Toledo Municipal Court.

*Mr. John D. Scouten*, city prosecutor, for plaintiff.
*Mr. Alan S. Konop*, for defendant.

GABRIEL, J. On November 7, 1972, nonuniformed law enforcement officers of the Morals and Narcotic Squad of the Toledo Police Department pursued a known female prostitute and a male companion by automobile to a rooming house located at 1217 S. 22nd Street, Toledo, Ohio. The officers were not acting pursuant to a search warrant or arrest warrant. When the officers arrived at the premises, they gained admission to a common passageway in the rooming house. The consent to their entry was made by a youth, shown a badge, described as about fifteen years of age and known to one of the officers as the son of the land-

lord. The youth indicated to the officers that the couple who had been followed were occupying a specific room. The officers then proceeded down the passageway to that room and one of the officers peered through the keyhole of the private room. The officer observed, according to his testimony, the couple in a nude state, overheard "slurping sounds" resembling what is legally known as the act of fellatio, and observed an act of sexual intercourse taking place.

The female person, the defendant herein, was arrested without a legal warrant and charged as a first offender with using a room for an immoral purpose under R. C. 2905.27 (b). The offense is a misdemeanor. A motion to suppress was properly filed prior to trial and a hearing held. See *State* v. *Davis* (1964), 1 Ohio St. 2d 28. The evidence adduced is essentially what has been outlined above. Briefs in support of and against suppression have been filed by the defendant and prosecutor respectively.

The prosecution contends that no legal standing exists on the part of the defendant to raise the issue of an illegal search under the Fourth and Fourteenth Amendment to the U. S. Constitution. Such a position is untenable. The applicable law and the more desirable doctrine is that everyone who is lawfully upon the premises who was the subject of the search has such standing. On this question the U. S. Supreme Court has said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on the premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." *Jones* v. *United States* (1960), 362 U. S. 257.

Corollary to this, it is not incumbent upon the defendant when the search is warrantless to establish the legality thereof. Such burden rests upon the prosecution including the element of lack of legal standing to raise the issue of an illegal search. See *Beck* v. *Ohio* (1964), 379 U. S. 89.

Where a search is without a legal warrant either for the arrest of a suspect or a proper search warrant and there

has been no evidence indicating probable cause to believe a felony is being or has been committed, the subject of the search will be presumed to be lawfully on such premises and such presumption, in the absence of any evidence to the contrary, is not rebutted. For the purpose of this case, the lack of authority of the police officers to enter the premises (in other words, the officers lacked a neutral predetermination of the scope of the search and they lacked the consent to search by a person with the authority to grant the search) would be dispositive of any further legal issues involved. Therefore, without proper consent the officers entry upon these premises without a legal warrant for arrest, a proper search warrant, or probable cause to believe a felony was being or had been committed would invalidate the observations and audible sounds ultimately perceived. The consent to enter and search must be freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U. S. 543; see also *Karwicki v. United States*, 55 F. 2d 225; *Kovach v. United States*, 53 F. 2d 639. Where the issue of consent is raised the prosecution must show that this consent was specific, unequivocal and given intelligently and freely. Where such consent is coerced by a display of unreasonable force, intimidation or coercive conduct such consent is not freely and voluntarily given. See *United States v. Marquette* (1920), 271 F. 120; *United States v. Marra* (1930), 40 F. 2d 271; *Gibson v. United States* (1945), 149 F. 2d 381. The consent also can only apply to certain areas. For instance a landlord or his duly authorized agent cannot consent to a search of a private room but may give such consent as to common passageways, hallways, or mutually used areas. See *Chapman v. United States* (1961), 365 U. S. 610. The standard at present is that the Fourth Amendment is protective of people and not places. Therefore strained applications of agency or unrealistic doctrines of apparent authority deflect attention from the central ambit of the Fourth Amendment. See *Stoner v. California* (1964), 376 U. S. 483; also *State v. Bernius* (1964), 177 Ohio St. 155. The United States Supreme Court has indicated that when a person knowingly exposes certain things to the public

even at home or in his office he is not within the ambit of the Fourth Amendment. However "what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz* v. *United States* (1967), 389 U. S. 347. Therefore the standard is that the capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.

In the instant case it is questionable whether a youth of about fifteen years of age, known to be the son of the landlord, in the absence of such parent and without corroboration from such parent was duly authorized to grant consent. Subjectively he would certainly be more likely to acquiesce to the wishes of the law enforcement officers displaying police badges, in a manner overtly conveying consent, but which submission, in reality, might have been the product of coercion or intimidation. No testimony of such youth being produced, and no elaboration on this point being made by the evidence, it will be presumed that the consent was proper.

Are the visual observations and audible sounds made and heard by a police officer from a vantage point in a common passageway by surreptitiously peering through a keyhole and listening to sounds emanating from a private room adjoining same, a search within the meaning of the Fourth and Fourteenth Amendments to the U. S. Constitution? More commonly, a search is deemed to relate to the examination of a person, premises or other place for tangible items of property constituting contraband, evidence of the commission of a crime, fruits of a crime or things otherwise criminally possessed, weapons or other things by means of which a crime has been committed. Under federal laws wiretapping or "bugging" is severely limited and restricted, requiring prior approval of the U. S. Attorney General and only where certain exigencies are duly and properly shown as a prerequisite.

A search is defined in Black's Law Dictionary 4th Edition as: "An examination of a man's house or other buildings or premises, or of his person, with a view to the dis-

covery of contraband or illicit or stolen property, *or some evidence of guilt to be used in the prosecution of a criminal action* for some crime or offense with which he is charged." (Emphasis added.)

The underlying policy of both restrictions upon search and/or seizure, wiretapping or "bugging" is the constitutional right to be secure and free from unwarranted interference with one's privacy and to deter police officers from illegal intrusions interfering therewith. This extends to one's person, motor vehicle, home, apartment, room in a boarding house, hotel, motel, condominium or other dwelling. The duration of stay or occupancy, or legal status as to presence, be it owner, tenant, or lessee, bailee or licensee is irrelevant. In a mobile, transitory and highly populated society such as prevails in our modern day culture, the right to be free from illegal intrusions is no less protected legally and probably more desirable and needed by the citizenry. No matter how gregarious by nature, there are situations when everyone desires and is entitled to the peace, security, sanctity and privacy of his person and/or physical surroundings at any given moment of his existence.

It is interesting to note that under Ohio's search warrant law, a knock and announcement of identity and intention to search by officers executing same is required before entry can be made by breaking or force. See R. C. 2935.12. Certain exceptions exist; namely, where there is reasonable cause to believe the defendant will flee and/or the sought evidence may be disposed of or destroyed or where the officers are in peril of bodily harm. See *State* v. *Furry* (1971), 31 Ohio App. 2d 107. See also *Sabbath* v. *United States*, 391 U. S. 585. Thus even with a valid search warrant some notice or warning by police officers *usually* must precede an intrusion, in the absence of the above exigencies. (Emphasis added.)

An illegal search without any seizure of physical evidence is an intrusion prohibited by the Fourth and Fourteenth Amendments to the U. S. Constitution. To hold otherwise would expose the people who are "to be secure in

their persons, houses, papers and effects: (Fourth Amendment, U. S. Constitution) to the same invasions of privacy that a search and seizure of tangible property entails. To permit such incursions, where nothing is seized, without compliance with the legal safeguards or prerequisites developed by the courts, would be the "open sesame" to abuses by law enforcement officers never intended under our system of government.

Furtive observations and eavesdropping even from a lawfully occupied vantage point clearly do not fall within the "plain view doctrine"; namely, where the police officer inadvertently finds legally seizable evidence "in plain view" where the intrusion was initially with proper authority. Where the police officer *anticipates or expects to find such evidence* the doctrine is inapplicable. See *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443. Clearly, here, there was such expectation. (Emphasis added.)

A misdemeanor where observed and/or heard upon the present circumstances is not committed within the presence of the police officer because of the illegal intrusion enabling the viewing and/or hearing. Such observations and matters heard surreptitiously are evidence no less than items of a physical nature seized and taken. They are, in effect, the mental recordings perceived by the senses that constitute the usual eyewitness' competency to testify or what is usually termed the ability to observe, recall and relate.

The public policy underlying the suppression of illegally obtained evidence is founded not only to preserve the right to be free from unlawful intrusions, but, as a corollary, is designed to deter and prevent law enforcement officers from making such intrusions. See *Mapp* v. *Ohio* (1961), 367 U. S. 643.

Accordingly, the testimony of the police officers relating to keyhole observations and evidence of the sound heard by eavesdropping are hereby suppressed and defendant's motion to suppress is hereby granted.

*Motion granted.*