THE STATE OF OHIO *v.* SCOTT.
THE STATE OF OHIO *v.* CREWS.
THE STATE OF OHIO *v.* WEATHERSPOON.

(Nos. 85CRB25189, -90, -91—Decided February 24, 1986.)

Hamilton County Municipal Court.

*Terrence Cosgrove,* assistant city prosecutor, for plaintiff.
*Chris Laber,* for Joseph Scott.
*Fred H. Kleinhaus, Jr.,* for William Crews.
*Cathy R. Cook,* for Henry Weatherspoon.

HOGAN, J. The cases involving the defendants, Joseph Scott, William Crews and Henry Weatherspoon, were

called for a hearing on previously filed motions to suppress on January 30, 1986. A co-defendant, William Bradfield, had filed a similar motion which was heard and determined by Judge J. Howard Sundermann of this court on December 10, 1985. To simplify the proceedings here, the parties have agreed to stipulate the accuracy of the transcript of the proceedings before Judge Sundermann. In addition to the transcript, the parties have stipulated that the three defendants presently before the court were present in the house where the alleged criminal activity took place.

A review of the transcript shows that a Cincinnati police officer and her partner responded to 851 Hutchins to investigate citizen complaints of illegal gambling. After observing certain persons enter the house, the police officer climbed on her partner's shoulders and observed via a space in the curtain several persons playing cards for money. She then called for additional officers who arrived soon thereafter with a device known in the trade as a "battering ram." An officer knocked on the door or rang the bell and was voluntarily admitted by the defendant Bradfield.

The issue to be resolved here is whether or not the police officer's view of the "game" was an unconstitutional search. The police officer testified that she had observed the house in question on prior occasions, that there was a continuous flow of people entering and leaving during the evening hours, that the curtains were drawn and that conversation was overheard, the general topic of which was card playing. The information in the hands of the police would have constituted probable cause for the issuance of a search warrant had one been sought.

The first question to be resolved is whether a search had occurred. For guidance in resolving this issue, the court points to State v. McCarthy (1971), 26 Ohio St. 2d 87 [55 O.O.2d 161], and a statement made therein at 89-90 that "a search ordinarily implies a quest by an officer of the law, a prying into hidden places for that which is concealed." Also helpful is the opinion in State v. Person (1973), 34 Ohio Misc. 97 [63 O.O. 406]; and the court's comment therein at 101 that "observations and audible sounds made and heard by a police officer from a vantage point in a common passageway by surreptitiously peering through a keyhole and listening to sounds emanating from a private room adjoining same," constitutes a search. The court is convinced that a search occurred in the instant case.

Two cases from the First Appellate District help shed light on the defendants' "reasonable expectation of privacy," at least to the extent that they state what is not within the parameters of the phrase. In State v. McClung (Mar. 3, 1982), No. C-810299, unreported, a University of Cincinnati security officer observed homosexual activity in a public restroom through openings between the stall doors and the frames. A painted sign in the restroom said "No Loitering — Under Police Surveillance." No reasonable expectation of privacy was found to exist and the defendant's pretrial motion to suppress was overruled. The same result was obtained in State v. Thurman (Apr. 30, 1980), No. C-790398, unreported, where a public restroom was also involved. In Thurman, the police climbed a scaffold erected behind a partition to a point approximately ten to fifteen feet above the restroom floor where they could peer through ventilator screens. Defendant was observed in a doorless toilet stall where defendant was, in turn, viewed by another patron of the restroom. There is, however, a clear distinction between a public place and a private home such as was involved in the case now before the court.

The pivotal point is whether or not the search was legally conducted — or otherwise stated, to be within the parameters placed upon agents of government by the Fourth Amendment to the federal Constitution. The state's only argument, it seems to us, is the plain view doctrine, but its applicability depends upon the right of the officer to be in the position to have a plain view. The doctrine is inapplicable to situations where the policeman's intrusion is not in accordance with the law. Here, the policeman's status in relation to the premises in question was that of a trespasser. A decision on point is *Akron* v. *Hajjar* (M.C. 1977), 5 O.O. 3d 230, which held that the plain view exception does not apply where police had received reports of illegal gambling on defendant's premises at least a month earlier but, instead of attempting to secure a warrant, simply went to defendant's home, walked across his lawn and peered into a basement window to see the game in progress. A motion to suppress was granted by Judge Roulhac of the Akron Municipal Court in the *Hajjar* case.

Although *Katz* v. *United States* (1967), 389 U.S. 347, involved electronic surveillance and not visual observation, crucial to the decision in *Katz* was the existence of a reasonable expectation of privacy requiring: (1) that the subject has exhibited an actual (subjective) expectation of privacy and (2) that the expectation be one that society is prepared to recognize as reasonable. The intrusion in the instant case was made through closed drapes into a private home and at a height achieved by an acrobatic feat of a police officer on another's land without consent. Certainly, a reasonable expectation of privacy was present on behalf of the occupier of the premises and his guests. Granted, the *Katz* case dealt with electronic surveillance, but this court fails to see the distinction between the uninvited ear and the intruding eye, either of which may violate constitutional standards if reasonable privacy rights are invaded.

It may be argued by the state that the status of the policeman here was not that of a trespasser since his intrusion upon the land of another was pursuant to privilege. See the Committee Comment following R.C. 2911.21, to wit: "Police * * * can claim that an intrusion is privileged when in the proper exercise of their duties." The next premise to complete the syllogism would be that if the intrusion is privileged, the observation made pursuant thereto is made in plain view and thus constitutionally proper.

In *Commonwealth* v. *Hernley* (1970), 216 Pa. Super. 177, 263 A.2d 904, the police officer's observations were from property adjacent to the defendant's. The reviewing court's decision that the search did not violate a reasonable expectation of privacy was based on the fact that curtains were not drawn and that a printshop, rather than a private home, was the focus of attention. Thus one's status as a trespasser is relevant but not determinative of the legality of a search that otherwise violates constitutional standards. *Katz, supra,* is in accord.

This court agrees with Judge Sundermann. The motion to suppress filed by each of the defendants in this case is granted.

*Motions to suppress granted.*