The STATE of Ohio, Appellee,

v.

BUZZARD, Appellant.

[Cite as *State v. Buzzard*, 163 Ohio App.3d 591, 2005-Ohio-5270.]

Court of Appeals of Ohio,
Third District, Crawford County.

No. 3-04-18.

Decided Oct. 3, 2005.

---

Clifford J. Murphy, Assistant Crawford County Prosecuting Attorney, for appellee.

John Spiegel, for appellant.

ROGERS, Judge.

{¶ 1} Defendant-appellant, Joel A. Buzzard, appeals a judgment entry of the Crawford County Court of Common Pleas, sentencing him upon his convictions for breaking and entering and receiving stolen property. On appeal, Buzzard asserts that the trial court erred in overruling the motion to suppress evidence found during the search of his home, that the evidence was insufficient to prove the charges of breaking and entering as well as receiving stolen property, and that the trial court erred in permitting the introduction of a laptop computer that was found in his house during the search and was allegedly reported stolen in Colorado. Finding that Buzzard's motion to suppress should have been granted, we reverse the judgment of the trial court.

{¶ 2} On October 17, 2003, the Bucyrus Police Department received a report that Kinn Brothers, a business located at 527 Whetstone Street in Bucyrus, Ohio, had been burglarized. The Kinn brothers operated a heating and cooling contracting business, and, as a result of the burglary, over $24,000 of merchandise, including a delivery truck, was stolen.

{¶ 3} While investigating the burglary, Tracy Keegan, a Bucyrus detective, noticed tire tracks in the dew. The tire tracks left Kinn Brothers, went through the grassy area between Kinn Brothers' and Buzzard's properties and ended near Buzzard's garage. Keegan testified that after following the tracks to Buzzard's garage, he looked into the garage through a crack in the loose-fitting door. According to Keegan, upon looking into the garage through the crack, he noticed a number of items that he believed to be stolen from Kinn Brothers. At that point, Keegan asked Lonn Kinn, owner of Kinn Brothers, to observe the property in the garage through the crack. Lonn testified that he did look through the crack in the door and that the police were holding the door open so that he could see into the garage. Lonn also identified several items in the shed as things that came from Kinn Brothers.

{¶ 4} Subsequently, Keegan obtained a search warrant to search Buzzard's garage and residence, which was located at 540 Union Street, Bucyrus, Ohio. The police executed the warrant and recovered over $20,000 of inventory stolen from Kinn Brothers, as well as a Dell laptop computer, which was allegedly reported stolen in Colorado. The police also recovered the stolen vehicle several blocks away from Buzzard's home.

{¶ 5} In January 2004, Buzzard was indicted on one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the third degree, and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree.

{¶ 6} In March 2004, Buzzard filed a motion to suppress the evidence discovered during the search of his home and garage. Following the hearing, the trial court denied Buzzard's motion to suppress.

{¶ 7} In May 2004, a jury trial was held. At trial, the state presented evidence that Kinn Brothers had been burglarized by someone coming in through the roof. Additionally, as noted above, Keegan testified that almost $20,000 worth of goods were recovered from Buzzard's house, including the Dell laptop computer. As to the computer, Keegan testified that the laptop had been stolen. According to Keegan, during the search Keegan discovered a card with a name on it with the laptop computer. He contacted that person and was informed by the individual that he had reported the computer stolen. Keegan then contacted the Colorado police and discovered that the computer had been reported stolen. At trial, the only evidence provided by the state as to the stolen laptop was the testimony of Keegan.

{¶ 8} At trial, Buzzard presented the testimony of several witnesses as well as himself. Melissa Olmstead, Buzzard's girlfriend and the mother of his children, testified that on October 14, 2003, she and Buzzard got into an argument. Olmstead went on to testify that the following day Buzzard told her that he was

leaving for Colorado. She went on to testify that the next time she saw Buzzard was a month later. Additionally, Olmstead testified that during the period prior to the burglary of Kinn Brothers, Buzzard had several people doing construction work on the house at 540 Union Street. She stated that while the crew was working on the house, the house was left unlocked.

{¶ 9} Buzzard testified that in October 2003, he had been working in Colorado. He stated that he would go to Colorado for a few weeks to work and that he would come back to Ohio on his time off. According to Buzzard, he had left for Colorado following the fight he had with Olmstead on October 15, 2003, and got to Colorado late on October 16, 2003. Additionally, he testified that on October 17, 2003, he had a power of attorney signed by a notary in Colorado, which allowed his brother to oversee the 540 Union Street property. The power of attorney was also entered into evidence.

{¶ 10} Buzzard also testified that there were several people who had access to the 540 Union Street property during the period of the burglary and that he did not know about or intend to receive any stolen property from Kinn Brothers. Finally, Buzzard testified that he did not know the laptop was stolen. According to Buzzard, he had traded several items for the Dell laptop with a man in Colorado; however, Buzzard did not know the man's name.

{¶ 11} Upon the presentation of all the evidence, the jury found Buzzard guilty of both breaking and entering and receiving stolen property. Subsequently, the trial court sentenced Buzzard upon his convictions. It is from this judgment that Buzzard appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred in overruling the motion to suppress the fruits of the search of the defendant's house and garage.

### Assignment of Error No. II

There was insufficient probative admissible evidence to prove both charges beyond a reasonable doubt.

### Assignment of Error No. III

The trial court erred in permitting the introduction of alleged other acts of defendant, which allegations denied defendant due process.

### Assignment of Error No. I

{¶ 12} In the first assignment of error, Buzzard asserts that the trial court erred in denying his motion to suppress. Specifically, Buzzard asserts that the

search warrant was predicated upon an illegal search by the police, where the police peered through a tiny crack in his garage.

{¶ 13} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. As such, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. The reviewing court then applies the factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law de novo. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

{¶ 14} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the state is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. *United States v. Chadwick* (1977), 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538, overruled on other grounds in *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619. Such areas include a person's home and the curtilage surrounding it. *Oliver v. United States* (1984), 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214.

{¶ 15} We are mindful that the police in the case sub judice did secure a warrant. Additionally, we acknowledge that where a valid search warrant is obtained, the good-faith exception will generally apply. Nevertheless, where a search warrant is issued on the basis of evidence obtained as a result of an illegal search, the good-faith exception does not apply. *State v. Carter* (1994), 69 Ohio St.3d 57, 68, 630 N.E.2d 355, citing *United States v. Vasey* (C.A.9, 1987), 834 F.2d 782, *United States v. Wanless* (C.A.9, 1989), 882 F.2d 1459, and *United States v. Scales* (C.A.10, 1990), 903 F.2d 765. Thus, we start our analysis by determining whether the actions of the police prior to obtaining the search warrant constituted an illegal search that would give rise to a Fourth Amendment claim.

{¶ 16} At the suppression hearing, Keegan testified that he was led to Buzzard's garage by the tire tracks in the dew. Additionally, he testified that Buzzard's garage had locked double doors that were pulled together in the middle by a lock. Keegan also described the door as warped and loose-fitting, with a quarter-inch crack between the doors, which, he stated, a person could see through without prying open the door.

{¶ 17} Lonn Kinn also testified that he too was able to see the tire tracks leading up to Buzzard's garage. Lonn also testified that the crack was a quarter-inch wide. However, he stated that Keegan was holding the door open a little bit and that he was not sure if you would have been able to see into the garage without pulling on the door in the manner that Keegan was. Finally, Buzzard testified that the door was not loose-fitting and that a person would not have been able to see into the garage without pulling on the door.

{¶ 18} Upon hearing the testimony of the witnesses, the trial court found that "the testimony that was unrefuted was that they were able to look inside and see what appeared to be property of Mr. Kinn." We must take this factual finding as true. Accordingly, while there is a dispute as to whether the police officers had to manipulate the garage door to see the items inside, we will proceed under the trial court's factual finding that a person was able to see through a quarter-inch crack without manipulating the door.

{¶ 19} Thus, considering the officer's action of peering into Buzzard's garage through a quarter-inch crack, our first consideration is whether Keegan was lawfully on Buzzard's property. Police are privileged to go upon private property when in the proper exercise of their duties. See *State v. Chapman* (1994), 97 Ohio App.3d 687, 647 N.E.2d 504. Here, Keegan testified that he had followed the track in the dew up to Buzzard's garage. While he does state that the tire tracks did not go right up to the garage, we are satisfied that Keegan was lawfully on Buzzard's private property at the time that he was peering into the garage. Thus, while Buzzard argues that the police were not privileged to enter his property or curtilage, we find that Keegan was in fact privileged to enter Buzzard's yard, as he was in the course of a proper investigation.

{¶ 20} Rather, what we are more disturbed by is Keegan's further action of peering into the quarter-inch crack in the garage. In order to determine whether Keegan's action was an illegal search, we must determine whether Buzzard had a reasonable expectation of privacy in the garage. A reasonable expectation of privacy is found only if (1) a defendant held an actual, subjective expectation of privacy and (2) that expectation was objectively reasonable. *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring); *California v. Ciraolo* (1986), 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210. Additionally, we acknowledge that "[w]hat a person knowingly exposes to the public, even in his home and office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. 507, 19 L.Ed.2d 576.

{¶ 21} Here, Keegan clearly stated that Buzzard's garage was locked and that there were no windows. Accordingly, we find that the actions of closing and

locking the garage doors clearly show that Buzzard had an actual, subjective expectation of privacy. Furthermore, we find that the closed, locked doors are also significant to show that his expectation of privacy was reasonable. Thus, the question left to consider is whether the quarter-inch crack is enough to extinguish Buzzard's reasonable expectation of privacy in the garage.

{¶ 22} In *Alliance v. Davis* (June 1, 1999), 5th Dist. No.1998CA00313, 1999 WL 744167, the Fifth District held that the defendant had no reasonable expectation of privacy where an officer was able to see the defendant raise, light, and smoke a water bong through a large picture window. In *Davis,* the Fifth District found that where an officer was lawfully on the defendant's front porch and could make his observation freely from the front porch, the defendant's expectation of privacy, even though he was in his home, had been extinguished. Id.

{¶ 23} Similarly, in *State v. Israel* (Sept. 26, 1997), 1st Dist. No. C–961006, 1997 WL 598396, the First District held that a search was legal when an officer was able to observe through a glass window in a side door a large amount of marijuana on the defendant's kitchen table. In *Israel,* the court was satisfied that even when the officer was at a side door, the defendant's reasonable expectation of privacy was defeated when the officer was able to see the illegal contraband in the home through the window. Id.

{¶ 24} Based on *Davis* and *Israel,* it is clear that when an officer is able to see an illegal activity through a window, there is no Fourth Amendment protection. We find this case distinguishable for two reasons. First, we cannot find that a quarter-inch crack is akin to a window. Second, unlike the clearly illegal activities and contraband in *Davis* and *Israel,* the property in this case was not clearly illegal on its face.

{¶ 25} First, if Buzzard's garage had a window or the doors were open and unlocked so that Keegan was able to easily see into the garage, Buzzard's reasonable expectation of privacy clearly would have been defeated. However, here Keegan was not simply able to look through a window or an open door. Rather, he had to peer into a quarter-inch crack between the doors. Even if he was able to see through the crack without prying on the doors, he would have had to make an additional effort to see through the crack. To see through a quarter-inch crack, Keegan at best would have had to have been right up against the garage, and it would have been difficult to see into the crack without squinting, contorting one's head, or making some added efforts. See *United States v. Blount* (C.A.5, 1996), 98 F.3d 1489, 1495, reversed in part en banc, 123 F.3d 831 (holding that when a police officer places his face within inches of a small opening in an almost completely covered rear window to look into the house, that officer has performed a "search" within the meaning of the Fourth Amendment).

{¶ 26} Additionally, Keegan testified that there were no lights in the garage, making it more difficult to see into the garage. Accordingly, this is simply not a situation where Keegan was able to just see into the garage, and we cannot find that a quarter-inch crack defeated Buzzard's reasonable expectation of privacy.

{¶ 27} Secondly, we are troubled by the fact that the thing being viewed was not an illegal activity or illegal contraband. Here, the thing being viewed was property, that was legal to own. In his testimony, Keegan stated that when he looked through the crack, he saw a furnace; however, he also stated that he did not know for sure that the furnace was one of those stolen from Kinn Brothers. At that point, Keegan asked Lonn Kinn to observe the property in Buzzard's garage. While the police may have been privileged to come onto Buzzard's private property, we cannot say that their privilege extended to Kinn. Even assuming that the police privilege did extend to Kinn, we find that the police asking for his assistance in this situation further compounded the Fourth Amendment violation.

{¶ 28} We find that the officers' actions here are similar to the actions taken by the officers in *State v. Scott* (1986), 27 Ohio Misc.2d 38, 27 OBR 423, 500 N.E.2d 939. In *Scott*, the court suppressed evidence of gambling obtained when an officer lifted another officer onto his shoulders to look into a window. Id. As in *Scott*, the officers' additional actions, which allowed them to make and substantiate their observations, distinguish these cases from those like *Davis* or *Israel*. In other words, in *Davis* and *Israel*, the officers were merely making an observation from a legal vantage point. However, here, as in *Scott*, from the lawful vantage point, the police were not able to simply observe the illegal act or contraband. Here, the police were looking through a quarter-inch crack, and they had to employ the aid of an additional person in order to determine that the thing being viewed was stolen property. We find that this, in conjunction with the fact that police were peering through a quarter-inch crack, clearly creates a situation that is distinguishable from either *Davis* or *Israel*.

{¶ 29} As noted above, what a person knowingly exposes to the public is not subject to Fourth Amendment protection; however, when a person takes steps to keep something private, that person's reasonable expectation of privacy is constitutionally protected. *Katz*, 389 U.S. at 351, 88 S.Ct. 507, 19 L.Ed.2d 576. Here, we find that Buzzard's garage was constitutionally protected. Accordingly, we find that the police engaged in an illegal search, which violated Buzzard's reasonable expectation of privacy, when they looked into a quarter-inch crack between two locked doors and, further, when the police were not able to immediately recognize the thing being viewed as stolen property.

**{¶ 30}** Furthermore, as noted above, because the good-faith doctrine does not apply where a search warrant is issued on the basis of evidence obtained as a result of an illegal search, all evidence obtained under the search warrant must be suppressed. *Carter,* 69 Ohio St.3d at 68, 630 N.E.2d 355. Accordingly, Buzzard's first assignment of error is well taken, and the judgment of the trial court must be reversed.

### *Assignment of Error Nos. II & III*

**{¶ 31}** In the second assignment of error, Buzzard asserts that the evidence was insufficient to prove either breaking and entering or receiving stolen property. In the third assignment of error, Buzzard asserts that the trial court erred in permitting the introduction of other-acts evidence. Based on the foregoing it is unnecessary for this court to address the remaining assignments of error. Pursuant to App.R. 12(A)(1)(c), assignments of error two and three have been rendered moot.

**{¶ 32}** However, we are compelled to comment on the sufficiency of the evidence as it relates to the laptop computer, allegedly stolen in Colorado. The testimony of Keegan that the laptop was stolen was, at best, hearsay upon hearsay and clearly inadmissible. Because the defense properly objected to the admission of this testimony, it should have been excluded.

**{¶ 33}** Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BRYANT, J., concurs.

CUPP, P.J., dissents.

CUPP, Presiding Judge, dissenting.

**{¶ 34}** I respectfully disagree with the majority's holding that the fruits of the search of Buzzard's garage must be suppressed.

**{¶ 35}** The majority concludes that Officer Keegan's search of Buzzard's garage constituted an illegal search because Buzzard had a reasonable expectation of privacy in his garage that was not defeated by a quarter-inch crack in the doors to the garage. The majority is particularly troubled by the lengths that Keegan went to in order to see between the doors, noting that it would have been necessary for Keegan to press his eye up against the garage and contort his head in order to see inside.

{¶ 36} In *United States v. Elkins* (C.A.6, 2002), 300 F.3d 638, the Sixth Circuit Court of Appeals determined the legality of a search in which a police officer observed marijuana being grown inside a building by bending down and peering inside through a gap of "somewhat less than an inch" around an exposed pipe. The appellate court determined that the property owners did have a reasonable expectation of privacy in the interior of the building, but such an expectation did not insulate the space against plain-view observation. Id. at 654. The court found that because the officer did not use a "sensory device," but only looked through an exposed gap in the wall with his unaided eye, anything that was observed was done so by "plain view."

{¶ 37} Neither did the court find that any contortions the officer made to see through the opening changed the "plain view" character of his observation. Id. "The fact 'that the policeman may have had to crane his neck, or bend over, or squat, does not render the plain view doctrine inapplicable, so long as what he saw would have been visible to any curious passerby.'" Id., quoting *James v. United States* (C.A.D.C., 1969), 418 F.2d 1150, 1151, fn. 1.

{¶ 38} The majority herein properly concludes that Officer Keegan had a right to enter Buzzard's property and curtilage in the course of his investigation and that, per a factual finding by the trial court, a person would be able to see through a quarter-inch crack without manipulating the doors of Buzzard's garage. Based on these facts and the reasoning of the Sixth Circuit Court of Appeals in *Elkins,* I would find that any items inside the garage that Keegan could observe by peering through the crack in the doors would be in plain view.

{¶ 39} Further, I do not find that the character of the property viewed changed the nature of Keegan's search. The facts demonstrate that when Keegan looked inside the garage, he saw a furnace. Even if Keegan could not identify that furnace as one stolen from Kinn Brothers, the observation of the furnace, coupled with the tire tracks leading from Kinn Brothers to Buzzard's garage, would be sufficient for the issuance of a search warrant, which, as the majority acknowledges, was obtained before the police entered the garage.

{¶ 40} For these reasons, I would overrule Buzzard's first assignment of error and hold that Officer Keegan's plain-view observation of the items inside Buzzard's garage did not constitute a search.