THE STATE OF OHIO, APPELLANT, *v.* BUZZARD, APPELLEE.

[Cite as *State v. Buzzard,* 112 Ohio St.3d 451, 2007-Ohio-373.]

(No. 2005–2061—Submitted October 18, 2006—Decided February 14, 2007.)

O'CONNOR, J.

{¶ 1} In this case, we consider whether the Fourth Amendment requires the police to obtain a warrant before looking through a small opening in a locked double door of a residential garage. We conclude that constitutional protections of the Fourth Amendment are not violated by the police action in this case.

## RELEVANT BACKGROUND

{¶ 2} On October 17, 2003, Detective Tracey Keegan of the Bucyrus Police Department proceeded to Kinn Brothers Plumbing and Heating to investigate a burglary. One of the owners informed Detective Keegan that several furnaces, a central air conditioner, hot water heaters, sinks, faucets, and similar goods had been stolen.

{¶ 3} Detective Keegan quickly noticed tire tracks leading from Kinn Brothers to a driveway ending at a nearby windowless building owned by Joel Buzzard that was described as a garage.

{¶ 4} A wooden double door at the entrance of the garage was secured by a lock in the middle of the door, but the door was "weathered," "warped and loose fitting." Detective Keegan testified that when he got to the garage door, he could see a furnace by looking through the crack between the double doors.

Police then asked the co-owner to look into the garage to determine whether the furnace was one that had been stolen from his business.

{¶ 5} To improve the owner's view, police officers pulled on the locked double door "a little bit" to enlarge the crack in the door. The opening was then approximately one-quarter of an inch. The owner looked through the crack and identified the furnace as one that had been stolen from the business.

{¶ 6} Based on this discovery, the police secured a warrant to search the garage and Buzzard's adjacent home. In the affidavit to support that warrant, Detective Keegan described the burglary and stated that by "following the tracks * * * on the wet ground[,] officers find that they lead to a garage located at 540 Union St. Inside the garage you can observe a new Lennox Furnace. The owner of Kinn Brothers states that it appears to be one of his missing furnaces. Observation of this furnace can be seen through the opening around the loose fitting door."

{¶ 7} In executing the warrant and searching the garage, officers found two furnaces, a central air conditioner, sump pumps, plumbing fixtures, and various other items that belonged to Kinn Brothers. Other stolen property, including a laptop computer, was found in the appellee's home. The value of the goods recovered was almost $20,000.

{¶ 8} Buzzard was indicted for breaking and entering in violation of R.C. 2911.13(A) and receiving stolen property in violation of R.C. 2913.51(A). After hearing all the evidence, including Buzzard's alibi—that he was in Colorado during the burglary—and Buzzard's claim that multiple people had access to his home and garage while he was out of state, a jury found him guilty of both charges.

{¶ 9} Buzzard appealed to the Third District Court of Appeals on three grounds, only one of which is relevant here: that the trial court erred in overruling his motion to suppress the evidence found in his garage and home. Specifically, Buzzard argued that the search warrant had been based on an illegal search by police. The "search" to which Buzzard referred is the detective's peering through the crack in the garage door: "the search warrant was predicated upon an illegal search by the police, *where the police peered through a tiny crack in his garage.*" (Emphasis added.) *State v. Buzzard,* 163 Ohio App.3d 591, 2005-Ohio-5270, 839 N.E.2d 469, ¶ 12. We are not presented with the question of whether the police action in opening the door wider was permitted.[1]

---

1. The Court of Appeals relied on the facts as found by the trial court, which appellate courts must accept as true when they are supported by competent and credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. The court of appeals acknowledged that there were three versions of the facts with respect to the aperture in the garage door. First,

{¶ 10} A divided panel of the Third District reversed the trial court's decision to deny the motion to suppress. The court of appeals quickly dispensed with an initial inquiry: whether Detective Keegan was lawfully on Buzzard's property. It concluded that the detective had followed the tracks to the garage and that he was privileged to enter the property in the course of a proper investigation. Id. at ¶ 19. That finding is not challenged here.

{¶ 11} The court of appeals, however, was "disturbed" by Detective Keegan's act of peering into the garage through the quarter-inch crack. Id. at ¶ 20. Noting that Buzzard had closed and locked his garage doors, and noting that there were no windows in the garage, the appellate court concluded that Buzzard had had an "actual, subjective expectation of privacy" in the garage. Id. The Third District concluded that Buzzard's privacy in the garage would not have been protected by the Fourth Amendment had the stolen chattels been visible to Detective Keegan and others through a window. Id. at ¶ 25. But after noting that the detective had to have been "right up against the garage," id., and making an additional effort to peer through the crack, it applied *United States v. Blount* (C.A.5, 1996), 98 F.3d 1489, 1495, reversed in part en banc (C.A.5, 1997), 123 F.3d 831, and held that the detective's actions constituted a search and that the Fourth Amendment was thus violated. *Buzzard*, 163 Ohio App.3d 591, 2005-Ohio-5270, 839 N.E.2d 469, ¶ 29. After concluding that the good-faith exception did not apply, the appellate court held that the motion to suppress should have been granted, and it reversed the trial court's judgment. Id. at ¶ 30.

{¶ 12} The state's discretionary appeal presented a single proposition of law: "Plain view is an objective standard without consideration of the subjective

---

Detective Keegan "testified that Buzzard's garage had locked double doors that were pulled together in the middle by a lock. Keegan also described the door as warped and loose-fitting, with a quarter-inch crack between the doors, which, he stated, a person could see through without prying open the door." *State v. Buzzard*, 163 Ohio App.3d 591, 2005-Ohio-5270, 839 N.E.2d 469, ¶ 16. Second, the owner of Kinn Brothers testified that "the crack was a quarter-inch wide. However, he stated that Keegan was holding the door open a little bit and that he was not sure if [someone] would have been able to see into the garage without pulling on the door in the manner that Keegan was." Id. at ¶ 17. Third, "Buzzard testified that the door was not loose-fitting and that a person would not have been able to see into the garage without pulling on the door." Id. The trial court, as the trier of fact in a suppression hearing, accepted the first version of the facts as true. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. In our review of the decision by the court of appeals, we similarly must accept that fact, i.e., that a person could see into the garage through a quarter-inch crack in the door without manipulating the door. *Buzzard*, 163 Ohio App.3d 591, 2005-Ohio-5270, 839 N.E.2d 469, ¶ 16. We pause to note that although the appellate court expressed that it was "troubled" because "the thing being viewed was not an illegal activity or illegal contraband" and that any privilege of the police to be on the property to investigate the burglary might not extend to Kinn, id. at ¶ 27, those issues are not presented for review here.

efforts of the criminal to avoid detection." We asserted jurisdiction to clarify the contours of the doctrine of plain view.

## ANALYSIS

{¶ 13} The Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government.[2] See, generally, *Smith v. Maryland* (1979), 442 U.S. 735, 740–741, 99 S.Ct. 2577, 61 L.Ed.2d 220; *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576. If the state wishes to intrude on the individual's right to be secure in his person, house, paper, and effects by searching or seizing him or his things, the state must first secure a warrant. Section 14, Article I, Ohio Constitution.

{¶ 14} Modern understandings of the Fourth Amendment recognize that it serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable. *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387; *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring).

{¶ 15} But if the individual does not act to preserve that privacy, such as by leaving an object in the plain view of the public, then the state has not "searched" within the meaning of the Constitution, because the individual has exposed those objects to others rather than keeping them to himself. *Katz*, 389 U.S. at 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring); 1 LaFave, Search & Seizure: A Treatise on the Fourth Amendment (4th Ed.2004) 445–446, Section 2.2; see, also, *Texas v. Brown* (1983), 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (plurality opinion noting that a police officer without a warrant is not precluded from viewing what a private citizen would be able to view). "Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection. *See California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 1812–13, 90 L.Ed.2d 210 (1986). Generally, the police are free to observe whatever may be seen from a place where they are entitled to be. *Florida v. Riley*, 488 U.S. 445, 449, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989)." *United States v. Fields* (C.A.2, 1997), 113 F.3d 313, 321. Simply put, the Fourth Amendment does not itself "draw the blinds the occupant could have drawn but did not." *State v. Smith* (1962), 37 N.J. 481, 496, 181 A.2d 761.

---

2. The parties and courts have analyzed this case under the express rubric of Fourth Amendment jurisprudence. Because the texts of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are virtually identical, we interpret the two provisions as affording the same protection. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762.

{¶ 16} This understanding of the Fourth Amendment is expressed in the plain-view, or open-view, doctrine. The doctrine embodies the understanding that privacy must be protected by the individual, and if a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them. *Horton v. California* (1990), 496 U.S. 128, 134–137, 140–142, 110 S.Ct. 2301, 110 L.Ed.2d 112.

{¶ 17} That mere observation of an object in plain view does not constitute a search is consistently applied by United States courts. For example, the United States Supreme Court has held that if police officers are at a lawful vantage point, they may use a flashlight to look through netting into a barn, even though they do not have a warrant to search that building. *United States v. Dunn* (1987), 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326. And the United States Court of Appeals for the Fifth Circuit extended the rationale of *Dunn* to encompass police officers' observations that were possible only when they placed their faces against the barn. The court held that "the distance between [the officers'] bodies and the structure into which they peered is of no consequence. To hold otherwise would require us to draw a specious distinction between those open field searches in which officers physically come up against a structure and those in which they are able to see inside even while standing back from the structure. The officers in this case did not physically tamper with or enter the barn in order to view its contents, but merely stood outside in the open field and looked in. Thus, the search did not violate the Fourth Amendment's proscription of searches within the curtilage of the home." *United States v. Pace* (C.A.5, 1992), 955 F.2d 270, 275–276.

{¶ 18} Other courts have also held that it is constitutionally permissible for a police officer to look through fortuitous apertures in garages without a search warrant. See, e.g., *State v. Bobic* (2000), 140 Wash.2d 250, 259–260, 996 P.2d 610 (holding that there was no search and no Fourth Amendment violation when police officer looked through a small, preexisting hole in the wall separating two commercial storage units and observed contraband); *People v. Cortorreal* (1999), 181 Misc.2d 314, 316, 695 N.Y.S.2d 244 ("Simply peering through the opening in a garage door does not constitute a search * * *"); *People v. Superior Court of Los Angeles Cty.* (1973), 33 Cal.App.3d 475, 481, 109 Cal.Rptr. 106 ("The condition of the premises [cracks in the door of the garage] which facilitated the ability of the officers to observe the items in the garage negated any exhibition of the defendant's reasonable expectation of privacy"); *State v. Crea* (1975), 305 Minn. 342, 343–344, 233 N.W.2d 736 (no Fourth Amendment violation when police find stolen snowmobiles after following snowmobile tracks to a basement door and shining a flashlight into a basement window while other officers peer into the garage through a hole in a window covering and a gap in the door and see a stolen snowmobile in the garage); *United States v. Wright* (C.A.D.C.1971), 449

F.2d 1355, 1356, 1362, 1366 (no constitutional violation when a police officer, with the aid of a flashlight, looks into a garage through an opening in the closed, locked doors that was one-half inch wide and eight inches long). We find that authority persuasive in this context.

{¶ 19} The detective in this case followed tracks from the scene of the burglary directly to the doors of the garage. The trial court rejected evidence that the police had created the gap in the door. See *United States v. Mankani* (C.A.2, 1984), 738 F.2d 538, 544 (no Fourth Amendment violation occurred when law-enforcement agent listened to conversations in adjoining hotel room through "fortuitous" hole in base of common wall, noting that "the presence of a visible door, crack or opening in a wall adjacent to another hotel room * * * should suggest to the average person that his or her privacy may be limited"). There is nothing before us to suggest that the garage was used by the appellee for any "intimate activity associated with the 'sanctity of a man's home and the privacies of life.' " *Dunn*, 480 U.S. at 300, 107 S.Ct. 1134, 94 L.Ed.2d 326, quoting *Boyd v. United States* (1886), 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746. Here, the viewing took place in front of the garage, where there is a diminished expectation of privacy. *United States v. Titemore* (C.A.2, 2006), 437 F.3d 251, 259, citing *United States v. Taylor* (C.A.4, 1996), 90 F.3d 903, 908–909.

{¶ 20} We believe that the Third District placed undue emphasis on its belief that "Buzzard had an actual, subjective expectation of privacy" in the garage by closing and locking the garage doors, 163 Ohio App.3d 591, 2005-Ohio-5270, 839 N.E.2d 469, ¶ 21, and did not sufficiently consider that any subjective expectation must be counterbalanced by objective reasonableness.

{¶ 21} The judgment of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed.

FARMER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in judgment only.

SHEILA G. FARMER, J., of the Fifth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

Stanley Flegm, Crawford County Prosecuting Attorney, and Clifford J. Murphy, Assistant Prosecuting Attorney, for appellant.

John Spiegel, for appellee.