DECISION AND JUDGMENT ENTRY
{¶ 1} Carl Johnson ("Appellant") appeals the judgment of the Athens County Court of Common Pleas finding him guilty of illegal assembly or possession of chemicals for the manufacture of drugs pursuant to R.C.2905.04 and denying his motion to suppress. He argues: (1) arresting officers lacked probable cause to arrest him and hold him in custody; (2) the *Page 2 
trial court erroneously admitted evidence obtained in violation of the plain view doctrine in the motion to suppress hearing; and (3) the trial court erred when it indicated it heard testimonial statements from the Appellant at the motion to suppress hearing, as the Appellant never testified at the hearing. Because we find that there was probable cause to support the Appellant's arrest, and the trial court properly denied the Appellant's motion to suppress, we affirm its judgment.
 I. FACTS. {¶ 2} On June 6, 2006, Athens County Sheriffs Deputy Cline responded to a call involving a neighbors' dispute on Gun Club Road near New Marshfield. Arriving at the destination at approximately 9:24 p.m., Deputy Cline spoke with an individual alleging that her next-door neighbor had made threats against her. Another resident in the home alerted Deputy Cline that the neighbors had "numerous weapons."
 {¶ 3} Deputy Cline, along with Deputies Morris and Sheridan, went next door to investigate. As Deputy Cline approached the residence, he observed two people in the kitchen through a seven-foot bay window with partially-open French blinds. He was able to observe the individuals, including the Appellant, through the window at a distance of three to five feet, and testified that he observed the scene for "approximately five *Page 3 
minutes" initially as a safety precaution as the other deputies were approaching the front door. The Appellant did not live at the residence, but was visiting from out of town. Deputy Cline noted that the Appellant's behavior became very nervous once he learned there were officers at the door; he jumped up from the table, ran to another table, and attempted to put lids on mason jars. Deputy Cline observed that one of the jars had a "two-part liquid in it * * * with a coffee filter on top." This arrangement caught Deputy Cline's attention, as he was aware from previous training that coffee filters in mason jars are typically related to the manufacture of methamphetamine.
 {¶ 4} Observing what he believed to be a meth lab, Deputy Cline returned to his cruiser and contacted Detective Heater, who has advanced training in meth lab detection. Detective Heater thereafter contacted the Ohio Bureau of Criminal Investigation. After these consultations and upon arrival of another deputy, the deputies ordered the individuals inside the residence to come outside, where they were detained for safety reasons and to prevent the destruction of evidence. Deputies Cline and Cotterill then entered the residence to check for any other individuals who may have been at risk from potentially-lethal fumes created as a by-product of methamphetamine production. When they entered the residence, the *Page 4 
deputies noticed an unidentified smoke in the air, as well as an odor, and therefore exited the residence immediately. Deputy Crites responded to the scene to assist with security. He testified that safety, at that point, was his main concern, because if the substance at the residence was meth oil, and fumes were present, there was a risk of explosion.
 {¶ 5} The deputies then contacted Detective Flickenger, who obtained a search warrant and contacted environmental meth lab clean-up specialists. He also ordered an evacuation of nearby residents downwind of the scene. The Appellant was placed under arrest, and on June 12, 2006, was indicted by the Athens County Grand Jury for illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.04(A). The grand jury further found that the offense was committed in the vicinity of a juvenile.
 {¶ 6} The Appellant filed a motion to suppress, and a hearing on the motion took place on August 2, 2006. On August 11, 2006, the trial court denied the motion to suppress. On August 15, 2006, the Appellant entered a change of plea from not guilty to no contest, and the trial court sentenced him to five years in prison. The Appellant now appeals the judgment of the trial court, asserting the following assignments of error:
 {¶ 7} 1. THE DEPUTY SHERIFFS LACKED PROBABLE CAUSE *Page 5 
TO ARREST THE DEFENDANT AND HOLD HIM IN CUSTODY.
 {¶ 8} 2. THE COURT ERRONEOUSLY ADMITTED EVIDENCE OBTAINED IN VIOLATION OF THE "PLAIN VIEW" DOCTRINE IN THE MOTION TO SUPPRESS HEARING.
 {¶ 9} 3. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT INDICATED IT HEARD TESTIMONIAL/EVIDENTIARY STATEMENTS BY THE DEFENDANT UNDER CROSS EXAMINATION BY THE PROSECUTION IN THE MOTION TO SUPPRESS HEARING. THE TRIAL COURT ERRED BECAUSE THAT CROSS EXAMINATION REFERRED TO NEVER TRANSPIRED BECAUSE THE DEFENDANT DID NOT TESTIFY IN THE MOTION TO SUPPRESS HEARING.
 II. {¶ 10} In his first assignment of error, the Appellant argues that the Athens County Sheriffs Deputies lacked probable cause to arrest him and hold him in custody. In his second assignment of error, the Appellant asserts that the trial court erroneously admitted evidence obtained in violation of the plain-view doctrine. For ease of analysis, we will address these assignments of error jointly.
 {¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Featherstone,150 Ohio App.3d 24, 2002-Ohio-6028, at ¶ 10, citing State v. Vest (2001), Ross App. No. 00CA2576, 2001 WL 605217; State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1. In a motion to suppress, the trial court assumes the role *Page 6 
of trier of fact, and as such is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; see, also,State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657; State v. Klein (1991),73 Ohio App.3d 486, 488, 597 N.E.2d 1141; Williams; and Guysinger.
 {¶ 12} As noted supra, in his first assignment of error, the Appellant argues that the deputies lacked probable cause to arrest him. An arrest is valid when the arresting officer has probable cause to believe the arrestee has committed a crime. See State v. Timson (1974),38 Ohio St.2d 122, 311 N.E.2d 16, paragraph one of the syllabus. Probable cause to justify an arrest has been described as "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the *Page 7 
petitioner had committed or was committing an offense." Beck v.Ohio, 379 U.S. 89, 85 S.Ct. 223, citing Brinegar v. United States,338 U.S. 160, 69 S.Ct. 1302. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating often opposing interests. Brinegar, supra, at 176. Requiring more would unduly hamper law enforcement; allowing less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice. Id.
 {¶ 13} In the case sub judice, Deputy Cline observed an erratic shift in the Appellant's behavior when he was alerted of the police presence at the residence. The Appellant scrambled to place lids on mason jars that contained a two-part liquid and were equipped with coffee filters as soon as he became aware that law enforcement officials were on the premises. As noted supra, Deputy Cline understood that mason jars and coffee filters, arranged in the manner which he observed, were indicative of methamphetamine lab activity. Based upon his observations, he and the other deputies present at the residence placed the Appellant under arrest. The aforementioned facts and circumstances, including the Appellant's observed behavior and the objects found at the residence, were sufficient to lead law enforcement officials to believe that the Appellant was committing *Page 8 
an offense, i.e., manufacturing methamphetamine. As such, the deputies had probable cause to arrest the Appellant.
 III. {¶ 14} In his second assignment of error, the Appellant argues the trial court erroneously admitted evidence obtained in violation of the plain-view doctrine. The Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government.[2] State v. Buzzard (2007), 112 Ohio St.3d 451,2007-Ohio-373, at ¶ 13, citing Smith v. Maryland (1979), 442 U.S. 735,99 S.Ct. 2577; Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507. The Fourth Amendment serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable. Rakas v. Illinois (1978), 439 U.S. 128, 143, 99 S.Ct. 421. But if the individual does not act to preserve that privacy, such as by leaving an object in the plain view of the public, then the state has not "searched" within the meaning of the Constitution, because the individual has exposed those objects to others rather than keeping them to himself. *Page 9 
 Buzzard, supra, at ¶ 15. Generally, the police are free to observe whatever may be seen from a place where they are entitled to be.Florida v. Riley (1989), 488 U.S. 445, 449, 109 S.Ct. 693. As notedin Buzzard, supra, "the Fourth Amendment does not itself `draw the blinds the occupant could have drawn but did not.'" Id. at ¶ 15, citingState v. Smith (1962), 37 N.J. 481, 496, 181 A.2d 761. This concept is known as the plain-view, or open-view doctrine. It embodies the understanding that privacy must be protected by the individual, and if a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them.Horton v. California (1990), 496 U.S. 128, 134-37, 110 S.Ct. 2301.
 {¶ 15} In Buzzard, supra, the Supreme Court of Ohio reversed a Third Appellate District decision that suppressed evidence found by officers who peered through a crack in a locked garage, using their hands to open the crack further. Officers subsequently obtained a search warrant based upon their observation of stolen goods inside the locked garage. Like inBuzzard, the deputies in the instant case observed evidence strongly suggesting the manufacture of methamphetamine through an opening in the structure, a window with partially-open French blinds. Applying the rule announced in Buzzard, quite literally, to the case sub judice, theFourth Amendment does not itself draw the blinds the occupant could have drawn but did not. The *Page 10 
deputies were therefore free to observe the action taking place within the residence, as well as the objects therein, as they were lawfully present on the property. The issuance of the search warrant was premised on the information gathered in connection with the lawful plain-view observations of the deputies. In light of this proper issuance, there was competent, credible evidence to support the trial court's denial of the Appellant's motion to suppress. Accordingly, we overrule the Appellant's first and second assignments of error.
 IV. {¶ 16} In his third assignment of error, the Appellant argues that the trial court erred when it indicated it heard testimonial statements from the Appellant at the motion to suppress hearing, as the Appellant never testified at that hearing. Unfortunately, the Appellant's third assignment of error appears to be the result of not having the full transcript at the time he submitted his first brief. The full transcript readily shows that the Appellant did, in fact, testify at the suppression hearing. As such, his third assignment of error is overruled.
 {¶ 17} In our view, probable cause existed for deputies to arrest the Appellant; additionally, there was competent, credible evidence to support the trial court's denial of the Appellant's motion to suppress. Because of *Page 11 
these findings, and the lack of merit associated with the Appellant's third assignment of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Kline, J.: Concur in Judgment and Opinion.
[2] The parties and courts have analyzed this case underFourth Amendment jurisprudence. Because the texts of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are virtually identical, we interpret the two provisions as affording the same protection. See State v. Robinette (1997),80 Ohio St.3d 234, 238, 685 N.E.2d 762. *Page 1