OPINION *Page 2 
{¶ 1} This matter is before this Court on remand from the Supreme Court of Ohio for further proceedings, consistent with the opinion rendered by the Supreme Court of Ohio. The Supreme Court of Ohio reversed this Court's opinion on the first assignment of error and ordered the remaining assignments of error previously rendered moot by this Court to now be decided.
 {¶ 2} The defendant-appellant, Joel A. Buzzard ("Buzzard"), appeals the July 21, 2004 Judgment of conviction and sentence entered in the Crawford County Common Pleas Court, Bucyrus, Ohio.
 {¶ 3} On October 17, 2003, the Bucyrus Police Department received a report that Kinn Brothers Plumbing and Heating, which was located at 527 Whetstone Street, Bucyrus, Ohio, had been burglarized. One of the owners informed Detective Tracey Keegan of the Bucyrus Police Department that several furnaces, a central air conditioner, hot water heaters, sinks, faucets, other similar goods, and a delivery truck were stolen from the premises.
 {¶ 4} While investigating the burglary, Detective Keegan noticed tire tracks in the grass leading from Kinn Brothers to a driveway ending at a nearby windowless building owned by Joel Buzzard that was described as a garage. Detective Keegan testified that the distance between the Kinn Brothers building and the garage owned by Buzzard was approximately fifty yards. The tracks were *Page 3 
observed from the ground beside the Kinn Brother's building and also from the roof of the building when they were investigating the means of entry into the Kinn Brother's building for the burglary.
 {¶ 5} Detective Keegan followed the tire tracks to the garage and looked into the garage through a wooden double door at the entrance of the garage which was secured by a lock in the middle of the door, but the door was "weathered," "warped and loose fitting." Detective Keegan testified that when he got to the garage door, he could see a furnace by looking through the crack between the double doors. Police then asked the co-owner, Lonn Kinn, to look into the garage to determine whether the furnace was one that had been stolen from his business.
 {¶ 6} To improve the owner's view, police officers pulled on the locked double door "a little bit" to enlarge the crack in the door. The opening was then approximately one-quarter of an inch. The owner looked through the crack and identified the furnace as one that had been stolen from the business.
 {¶ 7} Based on this discovery, the police secured a warrant to search the garage and Buzzard's adjacent home, which was located at 540 Union Street, Bucyrus, Ohio. In the affidavit to support that warrant, Detective Keegan described the burglary and stated that by "following the tracks * * * on the wet ground[,] officers find that they lead to a garage located at 540 Union St. inside the garage you can observe a new Lennox Furnace. The owner of Kinn Brothers *Page 4 
states that it appears to be one of his missing furnaces. Observation of this furnace can be seen through the opening around the loose fitting door."
 {¶ 8} In executing the warrant and searching the garage, officers found two furnaces, a central air conditioner, sump pumps, plumbing fixtures, and various other items that belonged to Kinn Brothers. Other stolen property, including a laptop computer, was found in the appellee's home. The police also recovered the stolen vehicle four to five blocks away from Buzzard's residence. The value of the goods recovered was approximately $20,000.
 {¶ 9} Buzzard was indicted in January of 2004 for breaking and entering in violation of R.C. 2911.13(A) and receiving stolen property in violation of R.C. 2913.51(A). In March of 2004, Buzzard filed a motion to suppress the evidence discovered during the search of his residence and garage. The trial court denied his motion to suppress following a hearing.
 {¶ 10} In May of 2004, a jury trial was held. At trial, the State presented the testimony of Detective Tracey Keegan, Lonn Kinn, Donna Smith, and David Olmstead. The State provided testimony that Kinn Brother's had been burglarized by someone coming in through the roof of the building and acquiring approximately twenty thousand dollars worth of merchandize. Detective Keegan testified that the merchandize was recovered from Buzzard's residence. Also, a Dell laptop computer was recovered from his residence. Detective Keegan *Page 5 
testified that the laptop was stolen. During the search, Detective Keegan observed a card with the laptop which had a name on it. He contacted that individual and was informed by the individual currently residing in Colorado, that he had reported the laptop stolen. Detective Keegan contacted the Thornton Police Department in Colorado and discovered that the laptop had been reported stolen.
 {¶ 11} Buzzard presented the testimony of Melissa Olmstead, Barbara Britner, and himself. Melissa Olmstead, Buzzard's girlfriend and the mother of his children, testified that on October 14, 2003, she and Buzzard had an argument. Melissa stated that the following day Buzzard informed her that he was leaving for Colorado and she did not see him until a month later. Additionally, Melissa testified that prior to the burglary of Kinn Brother's, Buzzard had several people doing construction on the residence and the house was often left unlocked.
 {¶ 12} Buzzard testified that he left for Colorado, following his fight with Melissa, on October 15, 2003 and arrived in Colorado on the evening of October 16, 2003. He stated that he had been traveling to Colorado for work every few weeks and during his time off he would return to Ohio. On October 17, 2003, he had a power of attorney signed by a notary in Colorado, which allowed his brother to oversee the 540 Union Street property. Buzzard also testified that there were several people who had access to the 540 Union Street property during the time of the burglary and he did not know about or intend to receive any stolen property *Page 6 
from Kinn Brothers. He also stated that he did not know the laptop was stolen, according to him, he had traded several items for the Dell laptop with a man in Colorado; however, he did not know the man's name.
 {¶ 13} After hearing all the evidence, including Buzzard's alibi-that he was in Colorado during the burglary-and Buzzard's claim that multiple people had access to his home and garage while he was out of state, a jury found him guilty of both charges. On July 19, 2004, a sentencing hearing was held and Buzzard was sentenced to twelve months in prison under Count I for the violation of R.C. 2911.13 and eighteen months in prison under Count II for the violation of R.C. 2913.51(A).
 {¶ 14} Buzzard appealed to this Court on three grounds, only one of which was addressed — that the trial court erred in overruling his motion to suppress the evidence found in his garage and home. On October 3, 2005, this Court concluded that the motion to suppress should have been granted and reversed the trial court's judgment.
 {¶ 15} On October 13, 2005, the State filed a Motion to Certify Conflict requesting this Court to certify its decision and Judgment Entry entered in the record and file stamped on October 3, 2005 to the Supreme Court of Ohio. On November 2, 2006, the State filed a notice of appeal with the Supreme Court of *Page 7 
Ohio. On November 16, 2006, this Court ordered that the State's motion to certify a conflict be overruled.
 {¶ 16} On February 22, 2006, the Supreme Court of Ohio accepted the case for review. On February 14, 2007, in State v. Buzzard,112 Ohio St.3d 451, 2007-Ohio-373, the Supreme Court of Ohio held that the police officer did not violate Buzzard's Fourth Amendment rights by looking through the small opening between garage doors. Therefore, the case was reversed and remanded to this Court for further proceedings consistent with its opinion. Consistent with the Supreme Court of Ohio decision inState v. Buzzard, 112 Ohio St.3d 451, 2007-Ohio-373, the first assignment of error is overruled.
 {¶ 17} Accordingly, this Court shall consider the remaining two assignments of error that Buzzard raised in his original appeal.
 Second Assignment of Error THERE WAS INSUFFICIENT PROBATIVE ADMISSIBLE EVIDENCE TO PROVE BOTH CHARGES BEYOND A REASONABLE DOUBT.
 Third Assignment of Error THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF ALLEGED OTHER ACTS OF DEFENDANT, WHICH ALLEGATIONS DENIED DEFENDANT DUE PROCESS.
 {¶ 18} Buzzard asserts in his second assignment of error that the guilty verdicts by the jury were not supported by sufficient evidence and were also *Page 8 
against the manifest weight of the evidence. Specifically, he alleges that the mere presence of the stolen items at the house and garage that Buzzard occupied was insufficient evidence because other people had access to his house and garage. In addition, he claims that even if there were enough to establish receiving stolen property there was not sufficient evidence to establish that Buzzard committed the charge of breaking and entering.
 {¶ 19} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. *Page 9 
 {¶ 20} The credibility to be afforded the testimony of the witnesses is to be determined by the trier of fact. State v. Dye (1998),82 Ohio St.3d 323, 329; State v. Frazier (1995), 73 Ohio St.3d 323. The jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 21} Pursuant to R.C. 2911.13(A),
 No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, * * *, or any felony.
 {¶ 22} R.C. 2913.51(A) states,
 No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 23} The testimony of Detective Tracey Keegan, Lonn Kinn, Donna Smith and David Olmstead were provided by the State and the testimony of Melissa Olmstead, Barbara Britner and Joel Buzzard were provided by the defense. The testimony established that the items recovered from Buzzard's property just hours after the break-in, were indeed the items stolen from the Kinn Brothers Plumbing and Heating. The items were spread throughout Buzzard's home in the attic, main floor and basement as well as in the garage. *Page 10 
 {¶ 24} The testimony of Melissa and Detective Keegan established that Buzzard was vigilant about who could and could not enter his residence including how even Buzzard's brother was to be accompanied by either Buzzard or Melissa. Buzzard provided testimony that the house was unlocked and five to seven individuals had access to the residence during the time that the items were found in his residence because the individuals were working on remodeling and renovating his house. However, none of the individuals were called as witnesses and the defense did not provide any other corroboration that these individuals existed or had access to the residence. Furthermore, Buzzard never filed a police report claiming that someone broke into his residence or garage.
 {¶ 25} In addition, Detective Keegan testified that the keys for the garage were kept in Buzzard's residence on a cubby shelf in the corner of the kitchen. However, Melissa testified that the keys were on a key ring that was on the turn signal column of her car. Buzzard stated that he thought the keys were on the cubby shelf in the kitchen, but he had just learned during the hearing that the keys were on the turn signal column in Melissa's car.
 {¶ 26} The evidence presented by the State through photographs and the testimony of Detective Keegan establishes that a vehicle owned by Kinn Brothers Plumbing and Heating was used to transport the stolen items along the side of the Kinn Brothers Plumbing and Heating building to the garage owned by Buzzard. It *Page 11 
is evident in the photographs that there were tire tracks leading from one location to another and in one police report it was stated that the tire tracks disturbed the dew on the grass. It was also stated by Detective Keegan that a hand truck or cart was found in the attached garage which could have been used to transport the stolen items from the truck to the garage.
 {¶ 27} Although Buzzard testified that he had an alibi for the day in question, he was unable to present the testimony of the individual with whom he was with. Buzzard and Melissa did testify that he left for Colorado with Randy or Robert Bell (there was conflicting testimony regarding the name of the individual) on October 15th and drove straight through to Colorado arriving on October 16th in the evening.
 {¶ 28} Also, the State presented testimony from David Olmstead stating that Buzzard was in town on October 16, 2003 because late in the evening his daughter, Melissa, came up to his house asking him for the payment for the trailer that he was living in. He told her that he didn't have it right then but could get it to her. She left, and Buzzard came up to the door and they had a heated argument about David not having the rent payment on time. The conversation got to the point where David told Buzzard that he had to get off of his property or he was going to call the police. The defense tried to discredit the testimony of David by *Page 12 
stating that David hated Buzzard and Melissa had to choose between her father, David and her boyfriend, Buzzard.
 {¶ 29} The defense also presented a limited power of attorney that Buzzard had apparently obtained on October 17, 2003 by a notary in Colorado. However, the notary was unable to be located and the witnesses of the document were also not called by the defense to support Buzzard's alibi or the authenticity of the document. Furthermore, Melissa was scheduled to be induced with Buzzard's first child two days after the break in occurred and Buzzard testified that he went out to Colorado but he did not have a job lined up to start once he arrived.
 {¶ 30} In this case, the jury was in the best position to consider the testimony and evidence presented at the trial. Specifically, the jury had to consider whether Buzzard was lying about his alibi, lying about the other individuals who were working on remodeling and renovating his house, and/or lying about the availability that others had to the unattached garage. In addition, the jury had the testimony before them establishing that the stolen items were found on Buzzard's property — spread throughout the home and the garage — just hours after the break-in occurred. The jury could also consider the proximity of Buzzard's property to the Kinn Brother's Plumbing and Heating business with the tracks of the truck connecting the two properties and the proximity in time between the breaking and entering in the Kinn Brother's business and the actual *Page 13 
recovery of the products. Furthermore, the jury had the testimony from different individuals establishing different stories as to the names of the individual who Buzzard traveled with to Colorado and about the location of the keys to the garage.
 {¶ 31} In sum in reviewing the totality of the evidence, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice as to the charge of receiving stolen property. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of receiving stolen property proven beyond a reasonable doubt.
 {¶ 32} However, while we find the circumstantial evidence sufficient to support the inferences necessary to establish the charge of receiving stolen property, we do not believe those inferences alone can properly be extended to the charge of breaking and entering without improperly building inferences upon inferences. Nor is there any additional evidence in the record, circumstantial or otherwise, upon which the jury could conclude beyond a reasonable doubt that Buzzard himself committed the breaking and entering of the business. Accordingly, Buzzard's second assignment of error is sustained as to the breaking and entering charge but overruled as to the charge of receiving stolen property. *Page 14 
 {¶ 33} Buzzard claims in his third assignment of error that the trial court erred in permitting the introduction of alleged other acts because the allegations denied him his Due Process Rights. Specifically, he alleges that despite being notified on two separate occasions through discovery that the State was proceeding with a receiving stolen property change that included a stolen Dell laptop computer from Colorado, in addition to the other items stolen from Kinn Brothers Plumbing and Heating, that the evidence regarding the laptop was (1) hearsay; and (2) prejudicial in that it shows his predilection to commit theft offenses.
 {¶ 34} Buzzard correctly observes that "an accused can not be convicted of one crime by proving he committed other crimes or is a bad person." State v. Jamison (1990), 49 Ohio St.3d 182, 183. Generally, in a criminal trial, evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, are inadmissible. State v. Smith (1990), 49 Ohio St.3d 137, 139; State v.Wilkinson (1980), 64 Ohio St.2d 308, 314. Exceptions to this general rule are limited by Evid. R. 404(B) to instances where the probative value of the evidence is sufficient to allow its admission.Smith, 49 Ohio St.3d at 139. Evid.R. 404(B) provides:
 Other crimes, wrongs, or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof *Page 15 of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Furthermore, under Evid.R. 403(A), even relevant evidence which is admissible under ordinary circumstances must be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice.
 {¶ 35} In this case, defense counsel offered an objection at the beginning of the May 20, 2004 jury trial regarding an allegedly stolen computer from a man in Colorado. Specifically, defense counsel contested that there was not a charge against Buzzard and the stolen laptop was an uncharged alleged other misconduct. The State responded by stating that defense counsel was informed that the State planned on using the laptop as part of the receiving stolen property charge and that this was provided to defense counsel through discovery at the beginning of the case. Furthermore, the State stated that it was explained to defense counsel where it was recovered and how it was returned. The trial court determined that since the alleged offenses took place in Crawford County and Buzzard's alibi is that he was in Colorado there seems to be some relevance to the issues in this case. The trial court stated that it would consider the evidence as it develops and would exclude the evidence if it was used to try to accuse Buzzard of additional criminal behavior. Accordingly, the trial court denied Buzzard's motion.
 {¶ 36} During the jury trial, defense counsel failed to object to the testimony offered by Detective Keegan establishing that the laptop had been *Page 16 
reported stolen. On cross examination, Detective Keegan stated that he was able to contact the owner of the computer due to the paperwork that was found inside the bag that the computer was in. Detective Keegan contacted the owner via telephone and the owner informed Detective Keegan that he had reported his Dell laptop computer stolen to the Thornton Police Department. During the conversation, Detective Keegan was able to gain access to the password on the computer and asked the owner various questions regarding the background and the contents that would be found on the computer. Once he had verified that the computer was in fact owned by this individual he contacted the Thornton Police Department to verify that the Dell laptop computer had been reported stolen by the owner.
 {¶ 37} It is well-settled law that absent plain error, the failure to object at trial waives the right to appeal the issue. Therefore, we may not reverse absent plain error. Crim.R. 52(B); State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804. In order to find plain error, this Court must be able to conclude that but for the admission of the improper evidence, the outcome of the trial would clearly have been different. Id. at 97, 372 N.E.2d 804.
 {¶ 38} Having reviewed the record and the transcripts, we cannot in good conscience say that the outcome of the trial would have been different. Moreover, it is axiomatic that the jury makes the final determination as to the credibility of *Page 17 
each witness. See State v. Walker (1978), 55 Ohio St.2d 208, 213,378 N.E.2d 1049. For these reasons, we cannot say that Buzzard was unduly prejudiced by the testimony of Detective Keegan regarding the Dell laptop computer. Accordingly, Buzzard's third assignment of error is overruled.
 {¶ 39} Therefore, for the reasons stated in the second assignment of error, the July 21, 2004 Judgment of conviction entered in the Crawford County Common Pleas Court, Bucyrus, Ohio is reversed as to the charge of breaking and entering and affirmed as to the charge of receiving stolen property. The judgment of sentence is vacated and the matter is remanded to the trial court for re-sentencing on the charge of receiving stolen property only.
Judgment affirmed in part and reversed in part.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1