OPINION *Page 2 
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry. Defendant-Appellant Rickey E. Schuster, Jr. ("Schuster") appeals from the January 3, 2007 Journal Entry of Sentence of the Court of Common Pleas, Union County, Ohio, sentencing him to 11 months in prison for his conviction of theft, a felony of the fifth degree in violation of Ohio Revised Code 2913.02(A)(3), (B)(2) and 12 months in prison for his violation of post-release control, with the sentences to be served consecutively.
 {¶ 2} This matter stems from events occurring on August 24, 2006 in Marysville, Union County, Ohio. On this date, Schuster, Adam Kinney ("Kinney"), Heather Fox Foster ("Foster") and Foster's son drove Schuster's girlfriend, Nicole Pyles ("Pyles"), to work in Delaware, Ohio. After dropping Pyles off at work, Schuster, Kinney, and Foster drove Pyles' car to the Super Wal-Mart located in Marysville.
 {¶ 3} Upon arriving at Wal-Mart, Kinney and Foster entered the store, got a shopping cart, and set off for the electronics department. Kinney and Foster loaded a computer, printer, monitor and keyboard into their cart and then continued to the television displays where they removed a 37" television set from a display and placed it into their cart. They subsequently proceeded to the exit *Page 3 
doors in the lawn garden department. Foster then distracted the cashier while Kinney pushed the shopping cart out through the exit doors without paying for any of the items in the cart which set off the store's alarm. Approximately one minute later, Foster exited Wal-Mart through the same door.
 {¶ 4} Once outside of the store, Kinney placed the items from the shopping cart into the trunk of Pyles' car and then re-entered Wal-Mart with Foster. Schuster entered Wal-Mart approximately 8 minutes later, got a shopping cart, and proceeded to the electronics department whereupon he placed a computer printer and telephone in his cart. While Schuster was placing these items in his cart, Kinney and Foster were placing additional items in their shopping cart in another part of the store. Kinney again exited Wal-Mart through the exit doors in the lawn garden department without paying for the items in his cart, setting off the alarm. Schuster then exited the store without paying for the items in his cart, and proceeded to the parking lot. Kinney and Schuster unloaded Schuster's cart, placed the items in the back seat of Pyles' car, and then got into the front seat of the car. Approximately five minutes later, Foster and her son exited the store, got into Pyles' car, and the parties drove away.
 {¶ 5} On September 27, 2006 a Union County Grand Jury indicted Schuster on one count of theft, a felony in the fifth degree in violation of R.C. 2913.02(A)(1), (B)(2), and one count of receiving stolen property, a felony of the *Page 4 
fifth degree in violation of R.C. 2913.51(A)(C). On October 24, 2006 Schuster appeared for his arraignment and requested court appointed counsel. Schuster entered a plea of not guilty as to both charges contained in the indictment.
 {¶ 6} On December 29, 2006 the trial court conducted a jury trial in this case. At the close of all the evidence, the jury found Schuster guilty of Count I, theft in violation of R.C. 2913.02(A)(1), (B)(1) and guilty of Count II, receiving stolen property in violation of R.C.2913.51(A)(c). This matter immediately proceeded to a sentencing hearing.
 {¶ 7} At the sentencing hearing, the trial court found that Schuster's convictions of theft and receiving stolen property were allied offenses of similar import. At the request of the court, the State elected to have Schuster sentenced under Count I. Therefore, the trial court sentenced Schuster to 11 months in prison for his conviction of theft. Additionally, the court found that Schuster was on post-release control at the time he committed this offense and therefore imposed a prison term of 12 months upon Schuster for violation of post-release control, to be served consecutively to the sentence imposed for his conviction of theft. Schuster was granted 79 days jail time credit.
 {¶ 8} Schuster now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE JURY'S VERDICTS ON THE FELONY THEFT AND RECEIVING STOLEN PROPERTY COUNTS ARE NOT *Page 5 SUPPORTED BY SUFFICIENT EVIEIDENCE (SIC) AND THE CONVICTIONS SHOULD BE REVERSED.
 {¶ 9} In his sole assignment of error, Schuster argues that the jury's verdict was not supported by sufficient evidence and should be reversed. Specifically, Schuster argues that there was not enough evidence to support his convictions for felony offenses, and that he should have been convicted of misdemeanor offenses as the value of the merchandise he removed from Wal-Mart was less than $500.
 {¶ 10} The standard of review for sufficiency of the evidence challenges is set forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, wherein the Supreme Court of Ohio stated as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new *Page 6 
trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} Additionally, the credibility to be afforded the testimony of the witnesses is to be determined by the trier of fact. State v.Buzzard, 3rd Dist. No. 03-04-18, 2007-Ohio-1539 citingState v. Dye (1998), 82 Ohio St.3d 323, 329; State v. Frazier (1995),73 Ohio St.3d 323. The jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 12} In the present case, in order to convict Schuster of theft, a felony of the fifth degree, the State was required to show beyond a reasonable doubt that Schuster, with purpose to deprive the owner of property or services, knowingly obtained or exerted control over either the property or services without the consent of the owner or person authorized to give consent, and that the value of the property or services stolen was $500 or more, but less than $5,000.
 {¶ 13} To convict Schuster of the charge of receiving stolen property, a felony of the fifth degree, the State was required to show beyond a reasonable doubt that Schuster received, retained, or disposed of property of another knowing or having reasonable cause to believe that the property had been obtained through *Page 7 
commission of a theft offense, and that the value of the property involved was $500 or more but less than $5,000.
 {¶ 14} Additionally, although Schuster was not charged with complicity, we note that R.C. 2923.03 defines complicity and provides, in relevant part, as follows:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense;
 (2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 (4) Cause an innocent or irresponsible person to commit the offense.
 * * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense. (Emphasis added).
 {¶ 15} Conspiracy and common purpose, among two or more persons, to commit crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from defendant's subsequent conduct. State v. Pruett (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884. Additionally, participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. State v. Johnson (2001), 93 Ohio St.3d 240, 245,754 N.E.2d 796. *Page 8 
 {¶ 16} At Schuster's jury trial the State presented the testimony of Robert Lowe ("Lowe"), a former assistant manager of the Marysville Wal-Mart. Lowe testified that Wal-Mart's surveillance system includes 24-hour interior video cameras covering merchandise "hot spots"[1], major aisles, registers, and the entrance/exit doors, and exterior cameras covering the parking lot. (Tr. pp. 53-56). Lowe testified that while working at Wal-Mart on August 24, 2006 he received a telephone call from the Marysville Police Department stating that someone had exited Wal-Mart with merchandise that was unpaid for. (Tr. p. 57). p. 59).
 {¶ 17} Lowe testified he reviewed the surveillance tapes which show Foster in the electronics department placing a computer tower and keyboard in her cart, Kinney approaching her at 6:56 p.m., and later, Foster and Kinney with a TV in the cart. (Tr. pp. 63-65). Lowe testified that the tapes also show Foster and Kinney in the lawn garden department at 7:02 p.m. and show Kinney exiting the store through the doors in the lawn garden department at 7:04 p.m. with Foster exiting shortly thereafter. (Tr. p. 65-68). Lowe testified that the exterior camera surveillance tapes show Kinney loading up a car with the items that were in his cart, closing the trunk of the car, and then re-entering Wal-Mart at 7:07 p.m. and that Foster re-entered the store then as well. (Tr. p. 68-69). *Page 9 
 {¶ 18} Lowe testified that the tapes show Schuster entering Wal-Mart through the doors in the lawn garden department at 7:15 p.m. and show him in the electronics department loading a computer item into his cart at 7:24 p.m. (Tr. pp. 69-70). Lowe also noted that Schuster was in the same aisle of the electronics department that Kinney and Foster were in earlier. (Tr. p. 70). Although Lowe admitted that the tapes did not show Schuster together with Kinney and Foster while in the store, he testified that Kinney exited the store through doors in the lawn 
garden department at 7:31 p.m. and Schuster exited behind him approximately 30 seconds to one minute later. (Tr. pp. 71-75). Lowe also testified that the tapes show Kinney and Schuster going to the same car and loading items into the car. (Tr. pp. 75-76).
 {¶ 19} The State also called Kinney as a witness. At the time of his testimony, Kinney was serving a ten month prison sentence for stealing items from Wal-Mart on August 24, 2006. (Tr. pp. 88, 94).
 {¶ 20} Kinney testified that he was familiar with Schuster and that he, Schuster, Foster and her son had driven Pyles to work in Delaware, Ohio. (Tr. pp. 87-89). Kinney testified that after dropping Pyles off at work, he suggested they go to a Wal-Mart, however they did not go to the Delaware or Marion stores. (Tr. pp. 90-91). Kinney testified that he and Foster got out of the car and walked in to the store together, but that he did not enter the store with Schuster. (Tr. pp. 91, *Page 10 
107-108). Kinney testified that he put kids' toys and a TV in Foster's cart and that he walked out of the doors without paying for the items. (Tr. pp. 97-100). Kinney testified that the first time he exited the store and unloaded his cart, he was alone. However, while watching the surveillance tapes on direct examination, the following exchange occurred between the State and Kinney:
 Q: Who's that coming out of the lawn garden center?
 A: That's — that's me.
 Q: Okay.
 A: Yeah. That's me.
 Q: Do you recognize who's pushing the cart across the
 crosswalk?
 A: I mean, it would have to be-I'll tell you here in a minute. It looks like its Rick. [Schuster].
 Q: Yeah. Where's that guy depicted here, where's he end up?
 He goes right to your car, right? You guys started unloading the
 carts together?
 A: Okay. But the first trip, like I said, hey, I was by myself.
(Tr. pp. 104-105). Additionally, Kinney testified that upon leaving Wal-Mart, he was not driving because he did not have a driver's license. (Tr. pp. 106-107).
 {¶ 21} The State also presented the testimony of Sheila Heinz ("Heinz") who testified that she and her daughter entered the Marysville Wal-Mart on August 24, 2006 at approximately 7:30 p.m. (Tr. pp. 30-31, 39). Heinz testified that as she was walking in the store, the alarms were going off, and a man was quickly pushing a cart out of the door. (Tr. pp. 31, 39). Heinz testified that she noticed that his cart did not have any Wal-Mart bags in it. (Tr. p. 39). Heinz testified that then another man was pushing another cart with merchandise in it, *Page 11 
again without any Wal-Mart bags in it, and it seemed to her as if she was in his way. (Tr. p. 31, 39). Heinz testified that she believed the two men were following each other, but that when she and her daughter approached, they were in the second man's way and that they may have held him back from exiting the same time as the first man. (Tr. pp. 37, 38).
 {¶ 22} Heinz testified that she went out to the parking lot and called 911 to report this activity. (Tr. p. 41). Heinz testified that while she was talking to the 911 operator, she observed the two men go to a car in the parking lot where they both began opening the car doors, taking merchandise out of the carts and putting it in the car. (Tr. pp. 39-40). She testified that the two men were working very fast and not in a leisurely manner. (Tr. p. 41). She testified that when she visually saw the two men putting items in the same vehicle, she concluded that they were together. (Tr. p. 51). Heinz also testified that when the two men got into the car they sat in the front seat, but seemed agitated and kept looking at the entrance like someone was going to come out. (Tr. pp. 41, 48). Heinz testified that about five minutes later a lady approached the car and one of the two men abruptly talked to her and she quickly got into the backseat of the car and they left. (Tr. p. 42).
 {¶ 23} Finally, the State presented the testimony of David Hunter ("Hunter"), an asset protection coordinator for Wal-Mart. Hunter testified that he has been trained to look for people engaging in suspicious behavior, selection of *Page 12 
big items, and a quick selection of items when trying to spot a theft. (Tr. pp. 110, 112-113). Additionally, Hunter testified that he has experience with people who come in groups to steal things and the group will split up and select items that they've previously talked about or items that will go together with one another. (Tr. p. 113). Hunter testified that the value of the items specifically taken by Schuster equaled $236.72. (Tr. p. 115). However, Hunter testified that the value of the other items taken equaled $3,012.40.[2]
 {¶ 24} The credibility of witnesses, including experts, is for the jury to decide. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, whether impeached or not, and it is for the fact finder to impartially determine if a witness is credible and the amount of weight to be afforded to that particular witness's testimony. State v. Bayer (1995),102 Ohio App.3d 172, 182, 656 N.E.2d 1314. The jury may believe or disbelieve any witness. State v. Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 25} In reviewing the totality of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice as to the felony charges of theft and receiving stolen property. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we *Page 13 
conclude that a rational trier of fact could have found that Schuster was acting in complicity with Foster and Kinney and therefore the essential elements of felony theft and felony receiving stolen property were proven beyond a reasonable doubt. Schuster's assignment of error is overruled.
 {¶ 26} Accordingly, the January 3, 2007 Journal Entry of Sentence of the Union County Court of Common Pleas sentencing Schuster to consecutive prison terms of 11 months for his conviction of theft and 12 months for his violation of post-release control, is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] Lowe testified that a Wal-Mart "hot spot" includes the electronics department, high ticket items, major aisle ways, registers, tobacco counters and areas of the store selling razor blades. (Tr. p. 55).
[2] Hunter testified that these other items included a 37 inch LCD television, LCD monitor, computer, Lexmark printer, keyboard and a DVD player. (Tr. p. 116). *Page 1